JOSEPH C. BAILEY *vs.* ÆTNA INSURANCE COMPANY.

A mortgagee of land, upon making a sale thereof under a power of sale, in the ordinary form, contained in the mortgage, may give credit for the purchase money, though in case the sum for which the land is sold is more than the sum secured by the mortgage he is liable to pay the surplus to the owner of the equity of redemption in money.

If the purchaser at such sale executes to the mortgagee a note and a new mortgage of the land in part payment of the purchase money, and the person who formerly owned the right to redeem the first mortgage becomes the owner of the right to redeem the second mortgage, and thereafter takes out a policy of insurance payable to the mortgagee in case of loss, without any words to indicate which mortgage title he thereby intended to recognize, the title of the mortgagee under the second mortgage will, in the absence of evidence to the contrary, be taken to be the one that is referred to.

CONTRACT upon a policy of insurance for $2000, issued by the defendants on the 14th day of April 1860, upon the plaintiff's dwelling-house in Brighton, for one year, "payable in case of loss to J. F. Taylor, mortgagee."

It was agreed in the superior court that in January 1855 Thomas Hunt mortgaged the premises to Jacob F. Taylor, to secure the sum of $3000, payable in three years, by a mortgage which contained a power of sale authorizing the mortgagee to sell the premises for breach of condition, " and out of the money arising from such sale to retain all sums then secured by this deed, whether then or thereafter payable, together with interest and all cost and expenses; paying the surplus, if any, to the grantor or his assigns." Taylor held also, as collateral security for his debt, a note of one Harrington for eight hundred dollars, which was paid to him, leaving $2200 due upon the mortgage debt. The plaintiff purchased the equity of redemption on the 7th of June 1856. In January 1857, Taylor sold the premises, under the power of sale contained in his mortgage, to Leander A. Haynes for $3200; and Haynes gave to Taylor a note for $2200, payable in six months with interest, and secured by a new mortgage upon the premises, and did not pay the balance of $1000. Haynes afterwards conveyed his equity of redemption, and in July 1857 the owner thereof advertised the property for sale at public auction, but was restrained by an injunction

**from** this court, issued upon a bill in equity by the present plaintiff. No further proceedings were had upon the bill in equity, nor was any further attempt made to sell the property, until that owner of the equity of redemption became insolvent, and his title was conveyed by the assignees of his estate by a deed of release to the plaintiff on the 26th of January 1860. The plaintiff then, on the 14th of April 1860, took out this policy, stating to the defendants' agent that there had been disputes and litigation as to the title to the premises, which were now settled. On the 9th of the following August, Taylor sold the premises, under the power of sale contained in his mortgage from Haynes, to Sedgwick L. Plummer, and on the same day executed a deed thereof to him, dated July 9th 1860, and the policy was also assigned to him on the 8th of August. Plummer thereupon, on the 9th of August 1860, went to the office of the defendants in Boston, and without the plaintiff's consent or knowledge, cancelled the policy, and received back a portion of the premium money, and took out a new policy in his own name. On the day following, the premises were destroyed by fire.

The present action was brought with the consent of Taylor, who makes no claim under the policy.

On these facts, judgment was rendered for the defendants, and the plaintiff appealed to this court.

*H. C. Hutchins,* for the plaintiff. The sale by Taylor to Haynes under the first mortgage was void. Haynes bid $3200 for the property, and paid only $2200, and even this sum he did not pay in money, but by giving a note and mortgage. The power of sale only authorized a sale for cash. Of course the mortgagee must receive and account for the surplus, above his debt, in cash ; and if the sale must to this extent be for cash, by what authority could he sell for a credit in any part ? This sale was manifestly a mere sham. There was no pretence of paying any more than $2200 upon the purchase for $3200. And if this sale was void, no title passed, and of course the second sale was void also. If the second sale was void, the assignment of the policy was also void, because Taylor as mortgagee could only

assign the policy with the debt and mortgage. *Young* v. *Eagle Ins. Co.* 14 Gray, 150, and cases cited. *Hale* v. *Mechanics' Ins. Co.* 6 Gray, 169. *Fogg* v. *Middlesex Ins. Co.* 10 Cush. 337. And under that state of things, of course Plummer had no right to cancel the plaintiff's policy.

*G. O. Shattuck*, for the defendants. The acts of the plaintiff, in taking a release of the right to redeem the second mortgage, and assuring the defendants' agent that the disputes and litigation as to the title were settled, gave validity to the sale, if any acts of his could have that effect. The accounting for the purchase money comes after the sale, and, if it is a condition, it may be waived. *Childs* v. *Dolan*, 5 Allen, 319. A sale under a power, with an agreement that a part of the purchase money may remain on mortgage, is valid. *Davey* v. *Durrant*, 1 De Gex & Jones, 535.

DEWEY, J. The interest of the plaintiff in the property insured by this policy ceased to exist with the sale made by Taylor to Plummer on the 9th of August 1860, if that sale was a valid one. The validity of it depends upon the title of Haynes, the mortgagor. Haynes was himself a purchaser at a sale under a power of sale in a mortgage made by Hunt, the plaintiff at the time being the owner of the equity of redemption. The only objections to that sale are, that the amount bid for the premises was not duly paid in cash, and that a portion of it was not required by the mortgagee to be paid at all.

The sale was for a sum larger than the amount necessary to pay the sum due on the mortgage, and if the plaintiff was the owner of the equity of redemption, and there was in fact a surplus, we do not see any reason why he might not have treated it as a valid sale, and have demanded the surplus to be paid over to him. If the transaction was a *bona fide* one, and the purchaser an innocent party, the title passed to him, and he, by the terms of the power of sale, was not accountable to the owner of the equity for the proper application of the purchase money.

If the mortgagee elected to give a credit for payment, as between the purchaser and himself he might do so, and the

mortgagor or his assignee entitled to the surplus would have the right to demand the cash for the same. If this whole proceeding of a sale to Haynes was, as is suggested upon the argument of the case, a fraud in which both parties concurred, this court would have forbidden the transfer of the property upon proper application. A proceeding of this character was at a former period insti tuted, and a proposed sale by an alleged owner of the equity of redemption of the mortgage given by Haynes was enjoined. But no further proceedings were had upon the bill, and subsequently Bailey, the plaintiff, became the owner of the equity of redemption of the Haynes mortgage thus given on the sale made on the 26th of January 1860. The effect of this was to place him very much in the position he originally occupied as owner of the equity under Hunt's mortgage. The Haynes mortgage was for an amount corresponding with the balance due on the mortgage of Hunt.

It was in this state of the title that the plaintiff procured his policy, and the inquiry is, whether it is not to be treated as a policy upon the interest of the plaintiff as owner of the equity of redemption of Haynes's mortgage to Taylor. It was by its terms made payable to Taylor as mortgagee, in case of loss. Taylor had ceased to be a mortgagee of Hunt. He had sold Hunt's title and made a conveyance to Haynes, under a power of sale contained in that mortgage. The existence of the mortgage by Haynes to Taylor was recognized by the plaintiff's purchasing the equity of redeeming it.

It is true that the plaintiff might have taken the release of the equity of redemption of the Haynes mortgage merely to be resorted to, in case his old title did not avail him, and therefore he is not to be estopped for that cause. But such former title, we apprehend from all the facts stated, was not the title and interest for which the plaintiff procured this policy. On the contrary, the policy was understood by all parties as intended to cover the interest of the insured in the equity of redemption of the Haynes mortgage held by Taylor. That was a sufficient interest and would have availed the plaintiff, had not that interest ceased prior to the happening of the loss. It seems that, by

virtue of a power of sale contained in that mortgage, the property was legally sold on the 9th of August 1860 to Plummer and a deed duly executed to him by the mortgagee Taylor, dated the 9th of July 1860. With this transfer all the right of Taylor as mortgagee, and of the plaintiff as owner of the equity of redemption, ceased to exist, and the premises were held solely as the property of Plummer *Judgment for the defendants.*